**B**

**B**

# BUTTERS BRAZILIAN LLP

JOHN H. BRAZILIAN
THOMAS J. BUTTERS

———

MEAGHAN E. BARRETT*
MATTHEW D. THOMPSON
AIME L. GOLDBERG*
KATHLEEN M. AVITABILE
AMY L. GADBOIS
ANDREA J. GONZALEZ

*Also admitted in New York

ONE EXETER PLAZA
BOSTON, MASSACHUSETTS 02116
617.367.2600
f 617.367.1363
www.buttersbrazilian.com

LENARD B. ZIDE
OF COUNSEL

September 29, 2006

**By Regular Mail**
Neil J. Gallagher, Jr.
Assistant U.S. Attorney
United States Attorney's Office
Suite 9200
1 Courthouse Way
Boston, Massachusetts 02210

Re:     **_United States v. Husie Joyner, et al., No. 05-cr-10239-RCL_**

Dear Mr. Gallagher:

Pursuant to Local Rule 116.3(A), the defendants in the above-referenced matter request the following material or information in the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known. As used throughout this motion, the term "government" includes all branches of the Justice Department, including the Bureau of Prisons, Department of Correction and like state correctional departments, as well as all state, local and federal police, investigative and prosecutorial agencies involved in any way in the investigation and prosecution of the crimes charged in the indictment. *See Kyles v. Whitley,* 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Osorio,* 929 F.2d 753, 762 (1st Cir. 1991) ("[T]he prosecutor is duty bound to demand compliance with disclosure responsibilities by all relevant dimensions of the government"); *United States v. Owens,* 933 F. Supp. 76, 86 (D. Mass. 1996) (disclosure obligation "governs all the offices of the United States Attorney and the Justice Department itself, ... the Bureau of Prisons ... and all other governmental agencies including state officers acting as agents of the federal government"):

1.     Disclosure of whether or not TFA Joao Monteiro was a special police officer with the Boston Housing Authority and the Attorney General designations, if any, allowing him to perform law enforcement duties;

Neil J. Gallagher, Jr.
September 29, 2006
Page 2 of 9

2.      Training records, evaluations, and personnel file of TFA Joao Monteiro and TFA
Scott Ridlon, including any complaints or  allegations that TFA's Monteiro or
Ridlon lied during the course of any prior investigations in which they were
involved;

3.      All information about whether any law-enforcement agent participating in the
investigation or trial of this case has been the subject of an investigation for
disciplinary action or criminal prosecution, or the subject of disciplinary action or
criminal prosecution, any of which were for conduct involving false statements,
perjury, obstruction of justice, receipt of gratuities or violation of rights of a
criminal suspect or defendant. *Giglio v. United States*, 405 U.S. 150, 154 (1972).
*See also United States v. Garrett,* 542 F.2d 23 (6th Cir. 1976) (error to foreclose
discovery of undercover agent's disciplinary records relating to his use of
narcotics and failure to submit to urinalysis); *United States v. Brooks,* 966 F.2d
1500, 1503 (D.C. Cir. 1992) (government's duty to produce exculpatory material
extended to local police department's homicide and Internal Affairs Division
files); *United States v. Henthorn,* 931 F.2d 29, 30 (9th Cir. 1991) (government's
failure to examine personnel files upon a defendant's request for production of
exculpatory material was reversible error).

4.      Disclosure of the certification, training and education of all persons who
translated or transcribed wiretap interceptions in this matter;

5.      Any and all information relative to how voice identifications were made,
specifically including but not limited to the manner and means the defendant's
voices were identified on the wiretaps (witnesses who have/are going to identify
them/date of the identification) and the procedure(s) used;

6.      Applications, affidavits, orders, data and other documents relating to all pen
registers and/or trap and trace devices in this case;

7.      Telephone subscriber and toll records referred to in affidavits regardless of
whether they were ultimately the target of wiretap orders;

8.      All records from the Criminal History Systems Board ("CHSB") and
Massachusetts Registry of Motor Vehicles ("RMV") for persons named in wiretap
affidavits that were pulled prior to applying for wiretap orders;

9.      All records, including but not limited to CHSB and RMV records, pulled prior to
the Alberto Romero wiretap application from any source concerning Jorge
Romero;

10.     Copies of all records relied on in the Monteiro Affidavits for the averment that
Alberto Romero was convicted in the Roxbury District Court on April 22, 1998 of
possession with intent to distribute class B and class D drugs;

Neil J. Gallagher, Jr.
September 29, 2006
Page 3 of 9

11.   Copies of all records relied on in the Monteiro Affidavit for the averments
      concerning Alberto Romero's arrest on February 9, 2005 by the Boston police and
      the seizure of four kilograms of cocaine;

12.   Electronic records of all Title III line sheets and synopses in PDF format as well
      as complete copies of all final line sheets or transcripts completed to date (beyond
      the preliminary transcripts provided to date). The defendants state that many of
      the .tif, .rtf, and .doc documents contain text which runs off the page and cannot
      be read. The .tif documents, moreover, cannot be searched and are difficult to
      work with. In an effort to create uniformity and easy reference, the defendants
      also request that the government provide Bates-stamped versions of all line sheets
      and transcripts;

13.   For the two calls between "Willie and Alberto Romero, 5/31/05, 3:15 a.m. (111C)
      and 5/31/05 1:34 p.m. (143C) that are discussed in the Monteiro Affidavit for the
      Alberto Romero wiretap, the following:

      a.   Whether at the time of the application the affiant had heard the call in
           Spanish;

      b.   Whether at the time of the application the affiant had available a Spanish
           transcript of the conversations, and if so, a copy of said transcripts;

      c.   Whether at the time of the application the affiant had an English transcript of
           the conversations and if so, a copy of said transcripts;

      d.   The names, background, and training of the interpreters who made such
           transcripts or any other written version of the two conversations that were
           made available to the affiant;

14.   Information law enforcement relied on in pinpointing the location of calls
      including, but not limited to, cell tower records and the results of Global
      Positioning Systems monitoring;

15.   Disclosure of the specific locations of items seized during the execution of search
      warrants;

16.   Photographs and videographic recordings taken during the execution of search
      warrants including, but not limited to:

      a.   The CD containing photos of the search for 57E Sumner Street, identified as
           Exhibit N-145;

17.   Disclosure of the locations from which law enforcement officers involved in the
      investigation surveilled on the defendants.

Neil J. Gallagher, Jr.
September 29, 2006
Page 4 of 9

18.  Boston Police Department Field Interrogation/Observation Reports ("FIO
     Reports") relating to prior stops or observations of any of the defendants and/or
     gang intelligence reports from the Boston Police Department gang files relating to
     any of the defendants;

19.  In addition to the DEA reports already provided, reports from the Boston Police
     Department and other law enforcement agencies that were involved in the
     investigation of this matter. See April 19, 2005 Affidavit of Joao Monteiro at ¶ 8.

20.  The results and reports of any physical and/or scientific test or experiment,
     including but not limited to:

     a.  Results of the latent finger print analysis from wrappers seized during the
         execution of a search warrant at 57E Sumner Street;

     b.  All documents not yet produced relating to any analysis of alleged drug
         substance(s), including but not limited to DEA-7 reports, state drug laboratory
         reports, and documents establishing the chain-of-custody for such substances,
         upon which the Government intends to rely;

21.  Photographs or videography used during identifications of defendants including,
     but not limited to:

     a.  Copies of the RMV and/or booking photo(s) used to identify Cedric Ingram as
         alleged in paragraph 26 of the Criminal Complaint in the above entitled
         action;

22.  CD of any recorded calls of any of the defendants while in pretrial detention
     whether or not the government anticipates introducing them into evidence or, in
     the alternative, if the CD contains exculpatory evidence;

23.  Handwritten notes, reports or any aural, video, or other electronic recordings
     relating to interviews of witnesses and/or debriefings of confidential informants
     and/or sources of information including, but not limited to those relating to:

     a.  The debriefing of the Source of Information referenced in the July 8, 2005
         Monteiro Affidavit at ¶¶ 50-51, that resulted in the averments in said
         paragraphs;

     b.  The information provided by a Boston Police Department confidential
         informant with respect to Anthony Smith and referenced in the July 14, 2005
         Monteiro Affidavit at ¶ 61;

24.  Handwritten notes, reports or recordings of interviews of Greg Bing with respect
     to the alleged conspiracy or any of Bing's co-defendants in this matter;

Neil J. Gallagher, Jr.
September 29, 2006
Page 5 of 9

25.    A written summary of any expert testimony that the government intends to use
       under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-
       chief at trial, including the witnesses opinions, the bases and reasons for those
       opinions, and the witness's qualifications.  This request includes, but is not
       limited to:

       a.  A summary of any testimony regarding "coded" conversations, including the
           bases on which law enforcement relied in decoding these conversations.  The
           defendants request all prior reports, affidavits, line sheets, transcripts, and any
           other information, including previous testimony by agents in other
           proceedings, relied on in support of their opinions.

       b.  Any charts, notes, files, or computer databases used by forensic experts or law
           enforcement officers to decode, translate, or otherwise make sense of
           language used by the defendants during the intercepted telephone calls.

       c.  The substance of any anticipated testimony of experts or law enforcement
           officers concerning the meaning of the language or terms used during the
           intercepted telephone calls.

       d.  The substance of any anticipated testimony of experts or law enforcement
           officers concerning differences in the properties of, the handling, packaging,
           preparation of,  pricing of, and distribution of cocaine base or crack as
           opposed to powdered cocaine.

26.    All phone logs, dispatch logs and records documenting communications between
       law enforcement personnel over radio, telephone, radio-telephone, or cellular
       telephone equipment, including communications using "direct connect" and/or
       "push-to-talk" features including, but not limited to, those relating to:

       a.  The stop and subsequent arrest of Cedric Ingram on May 12, 2005;

       b.  The motor vehicle stop of Christopher Baxter on June 22, 2005;

27.    The identities of all law enforcement personnel involved in the motor vehicle stop
       of Christopher Baxter on June 22, 2005;

28.    The identities of all law enforcement personnel involved in the stop, arrest,
       booking, and/or searching of Cedric Ingram's property on May 12, 2005;

29.    All documents, including police reports, notes or memos, relating to the stop and
       subsequent arrest of Cedric Ingram on May 12, 2005;

30.    All written, oral or recorded statements made by Trooper MacKinnon, Boyle or
       Ridlon relating to the stop, arrest, booking or searching of Cedric Ingram on
       May 12, 2005;

Neil J. Gallagher, Jr.
September 29, 2006
Page 6 of 9

31.   All complaints filed against Troopers Mackinnon, Boyle or Ridlon in the last five
      years, including those related to racial profiling;

32.   All written, oral or recorded statements made by Cedric Ingram in connection
      with the stop and arrest on May 12, 2005;

33.   All manuals, memos, or directives related to the inventory of property for State
      Police in effect on May 12, 2005.

34.   All documents relating to the inventory of Cedric Ingram's property on May 12,
      2005;

35.   All documents relating to the inventory search of Cedric Ingram's cellular phone
      on May 12, 2005;

36.   Copies of printouts of any cell phone numbers downloaded from:

      a.   Cedric Ingram's cell phone on May 12, 2005;

      b.   Any cell phones seized from the person of Donnelle Joyner or from the
           apartments at 75 Ellilngton Street, Dorchester, and at 175L Centre Street,
           Quincy.

37.   Copies of the RMV report(s) referred to in paragraph 28 of the Cedric Ingram
      Criminal Complaint;

38.   All documents relating to the stop and arrest of Shawn Reid and/or Arliss Evans
      on May 11, 2005;

39.   All written, oral or recorded statements made by Reid and/or Evans in connection
      with their arrest on May 11, 2005.

40.   All documents relating to the search and subsequent inventory of the property of
      Donnelle Joyner or his partner Joy Neely during the search of the first floor
      apartment at 75 Ellington Street, Dorchester, and teh aprtment at 175L Centre
      Street in Quincy, MA on or about July 22, 2005

41.   Any and all police reports, FIO Reports, or other documents, or audio or video
      recordings relating to a traffic stop of Dana Rice on or about September 12, 2005
      by Boston Police officers, or by any other law enforcement officials as referred to
      in paragraph 17 of Task Force Agent Monteiro's Affidavit of July 28, 2005.

42.   Any and all police reports, FIO Reports, or other documents, or audio or video
      recordings relating to a traffic stop of Dana Rice by detectives, as referred to in
      paragraph 21 of Task Force Agent Monteiro's Affidavit of July 28, 2005.

Neil J. Gallagher, Jr.
September 29, 2006
Page 7 of 9

43.    All FIO Reports, and any and all police reports, documents or other writings
       relating to traffic stops, searches, questioning, or arrests of Dana Rice.

44.    Any and all documents relating to the rental of automobiles from Enterprise or
       other rental car companies as to which the government is alleging that such rented
       vehicles were used in connection with the alleged drug conspiracy.

45.    Any and all police reports, FIO Reports, or other documents, or audio or video
       recordings relating to the arrest of one Earl Wilson on September 12, 2005
       following the motor vehicle stop of Dana Rice.

46.    Any and all documents reflecting contracts or agreements entered into by
       cooperating witnesses or informants involved in this case, and any documents
       reflecting the termination or deactivation of any such cooperating witness or
       informant by any law enforcement agency.

47.    Any and all information, or police reports, reports of interviews, debriefings, or
       other documents of whatever nature, or audio recordings, reflecting the fact that
       Defendant Husie Joyner sold or distributed marihuana at any point in time.

48.    All documents in the possession, custody and/or control of the government
       regarding the cooperating source ("CS") referred to in the various affidavits of
       Task Force Agent Joao J. Monteiro.  The documents should include, but not be
       limited to, the basis for the CS's deactivation for engaging in unauthorized
       criminal activity;

49.    All documents in the possession, custody and/or control of the government that
       indicate the present location of the CS, (whom we believe to be Albert Hobson);

50.    Any and all inducements, promises and/or rewards promised to or provided by the
       government to the CS, prior to his deactivation, for his cooperation and assistance
       in the investigation;

51.    Defendant requests that the government produce Jencks Act material no later than
       21 days before trial. This request pertains only to Jencks Act material that is not
       exculpatory. Exculpatory witness statements should, of course, be turned over as
       part of automatic discovery.

52.    For purposes of moving, pursuant to 28 U.S.C. § 530B(a) and Massachusetts Rule
       of Professional Conduct 3.4(g) of Massachusetts Supreme Judicial Court Rule
       3:07, to preclude the government from calling certain witnesses at any trial, the
       government should disclose the identities of the witnesses it intends to call who
       will be testifying in return for any consideration from the government.
       Consideration means monetary payment, relief from any monetary debt or
       favorable treatment in any criminal, civil or immigration proceeding for the
       witness or another.  Defendants request all ledgers, receipts, vouchers, and other

documents which describe the sums paid in any form to or for the benefit of the cooperating witness or his family in this and any other case in which the cooperating witness assisted any federal, state or local governmental agency. This request also specifically includes assistance provided to witnesses or their families or associates in securing housing, in remaining in existing housing, whether it be "Section Eight" housing or other subsidized housing or private housing; assistance in the relocation of a witness or a witness' family or associates; assistance with employment (in securing new employment or retaining existing employment)

Very truly yours,
COUNSEL FOR THE DEFENDANTS

 /s/ Peter T. Elikann_____
Peter T. Elikann (for Husie Joyner)
Law Offices of Peter Elikann
93 Beacon Street
Boston, MA 02108
617-742-9462

 /s/ George F. Gormley_____
George F. Gormley (for Greg Bing)
George F. Gormley, P.C.
755 East Broadway
3rd Floor
South Boston, MA 02127
617-268-2999

 /s/ Thomas J. Butters_____
Thomas J. Butters (for Anthony Smith)
Butters Brazilian LLP
One Exeter Plaza
12th Floor
699 Boylston St.
Boston, MA 02116
617-367-2600

 /s/ Michael R. Schneider____
Michael R. Schneider (for Donnelle Joyner)
Salsberg & Schneider
95 Commercial Wharf
Boston, MA 02110
617-227-7788

 /s/ Benjamin D. Entine____
Benjamin D. Entine (for Gerard Kimble)
Attorney at Law
Suite 300
77 Franklin Street
Boston, MA 02110
617-357-0770

 /s/ Glen P. Randall_____
Glen P.Randall (for Ralph House)
Office of Attorney Glen P. Randall
Suite 300
79 Merrimack Street
Lowell, MA 01852

 /s/ Robert L. Sheketoff____
Robert L. Sheketoff (for Alberto Q. Romero)
One McKinley Square
Boston, MA 02109
617-367-3449

 /s/ J. Thomas Kerner_____
J. Thomas Kerner (for Jorge A. Romero)
343 Commercial Street
Unit 104
Boston, MA 02109
617-720-5509

Neil J. Gallagher, Jr.
September 29, 2006
Page 9 of 9


 /s/ Bruce G. Linson_____
Bruce G. Linson (for Francisco Arias)
Law Office of Bruce G. Linson
Howe & Bainbridge Bldg.
220 Commercial St.
Boston, MA 02109
617-371-0900

 /s/ Matthew H. Feinberg___
Matthew H. Feinberg (for Mahiri Kazana)
Feinberg & Kamholtz
125 Summer Street
6th Floor
Boston, MA 02110
617-526-0700

 /s/ Diana K. Lloyd_____
Diana K. Lloyd (for Cedric G. Ingram)
Choate, Hall & Stewart
Two International Place
100-150 Oliver Street
Boston, MA 02110
617-248-5163

 /s/ John M. Goggins_____
John M. Goggins (for Erik M. McCormick)
Higgins, Goggins & Pawlak
46 Wachusett Street
Worcester, MA 01609
508-798-2288

 /s/ Roger A. Cox_____
Roger A. Cox (for Ronnie Christian)
Cox & Cox
30 Main Street
Ashland, MA 01721
508-231-1460

 /s/ Michael C. Andrews_____
Michael C. Andrews (for Dana T. Rice)
Law Offices of Michael C. Andrews
21 Custom House St.
Suite 920
Boston, MA 02110
617-951-0072

 /s/ Harold H. Hakala_____
Harold H. Hakala (for Brian Gilbert)
Suite 1150
15 Court Square
Boston, MA 02108
617-742-7040

 /s/ James H. Budreau_____
James H. Budreau (for Jermaine Gilmore)
Law Office of James Budreau
20 Park Plaza
Suite 905
Boston, MA 02112
617-227-3700


cc:    Lisa Roland, Courtroom Clerk to
       the Honorable Timothy S. Hillman