

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

November 7, 2006

ALL COUNSEL OF RECORD

    Re:  United States v. HUSIE JOYNER et al,
         <u>Criminal No. 05-CR-10239-RCL</u>

Dear Counsel:

    I am writing in response to your joint written request for discovery dated September 29, 2006.  I appreciate your agreement to not object to my request for additional time, until November 7, 2006, to submit my written response.  As further described below, most of the materials which the government is agreeing to provide will be produced by late next week, no later than November 17, 2006.  Some of the requested materials are enclosed.  I will address each of your requests in order in which they were submitted.

    <u>Request 1 (DEA TFA Joao Monterio)</u>:
    As described in the wiretap affidavits in this case, DEA Task Force Agent Joao Monteiro is and was during the duration of the investigation a deputized Task Force Agent with the DEA and an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. §2510(7).  TFA Monteiro is also a investigator/police officer with the Boston Housing Authority.

    <u>Requests 2, 3, and 52 (Brady/Giglio Information)</u>:
    The government will comply with its constitutional obligations under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), *Giglio v. United States,* 405 U.S. 150, 154 (1972), *United States v. Agurs,* 427 U.S. 97, 110 (1976), *Kyles v. Whitley*, 514 U.S. 419, (1995), and its progeny.  With regard to law enforcement witnesses, the government will provide any such material, if its exists, in accordance with Local Rule 116.2(B)(2) twenty-one (21) days before trial.

Request 4 (Government Contractor Translaters/Monitors):
The government declines to provide this information pursuant to LR 116.6(A). First, the majority of intercepted calls were in English and were monitored not by contract interpreters, but by law enforcement agents and officers from the DEA, MSP, and BPD. Second, the contract interpreters who were used to translate and interpret the calls that took place in Spanish will not be witnesses at trial. Finalized transcripts of Spanish language calls will be prepared by court certified interpreters.

Request 5 (Voice Identification):
The identification of the defendants in this case were not made strictly by "voice identification" but instead was done through a combinations of methods. To the extent that any identifications of voices have been made by participants in the conspiracy including indicted defendants, the government respectfully declines to provide any such disclosure pursuant to LR 116.6(A) at this time. To the extent, however, that identifications were made by law enforcement agents participating in the investigation, the following is illustrative list of how identifications were made.

First, defendants Husie Joyner and Gregory Bing were identified as the user of the target telephones after a series of controlled purchases of cocaine and crack cocaine from them between September 2004 and January 2005. Second, a large majority of participants on the wiretap were identified during the course physical surveillance. Details about this physical surveillance are included in the DEA 6 Reports, wiretap affidavits, and criminal complaints. Third, for some defendants, including Ronnie Christian, Gregory Bing, and Germaine Gilmore, BPD Detective Robert Fratailia identified the voices of these individuals through his personal interaction with them over the past several years. Fourth, agents in the DEA's wiretap monitoring room, through pen register data, were generally able to identify certain telephone numbers for particular defendants. Fifth, after the arrest of the defendants, the government obtained copies of the recorded jail calls for defendants Alberto Romero, Donnelle Joyner, Gerard Kimble, Bryant Gilbert, and Dana Rice. During these recorded calls, each of these defendants made statements identifying themselves, to some degree, as the speaker of the intercepted phone calls. Finally, with regard to defendant Dana Rice, TFA Monteiro listened to the recorded jails and immediately identified the voice as the Dana Rice as the same individual intercepted during the wiretap and identified as Dana Rice on the line-sheets.

Request 6 (Pen Register Applications):
The government will agree to provide the pen register applications and orders obtained during the course of the

investigation. The government has filed motions with the Court to unseal these pen registers and will provide them as soon as they are unsealed by the Court.

<u>Request 7 (Telephone and Subscriber Information)</u>:
The government will agree to produce, by the end of next week, the telephone toll record and subscriber information which was obtained via DEA Administrative Subpoena during the investigation of this case.

<u>Request 8 (CHSB and RMV Documents)</u>:
The government will agreed to provide, by the end of next week, the CHSB and MA RMV records which were obtained for the individuals named in the wiretap.

<u>Request 9 (CHSB and RMV Documents for Jorge Romero)</u>
This is request is unclear and I have asked for clarification from Attorney Thomas Kerner, counsel for Jorge Romero.

<u>Request 10 (Alberto Romero 1998 Roxbury District Court Conviction)</u>
Enclosed please find a CHSB record for Alberto Romero. Arraignment items 17 and 18 indicate that on 5/5/95 Romero was arraigned in Roxbury District Court for two counts of Possession With Intent to Distribute Class B and D in Docket #9502CR3681. The case was continued until 4/24/96 on which date Romero pled guilty to each of these counts and received a two-year suspended sentence (until 4/22/98). Prior to the termination of this suspended sentence, on 5/28/97 the suspended sentence was vacated and a disposition of a Continued Without a Finding (CWOF) was entered. According to this record, on 5/27/98, a default warrant was issued base on a violation of this period. On 7/16/98, the default warrant withdrawn and the CWOF period was terminated. As further described below, it is the government's position that a Continued Without a Finding (CWOF) disposition is conviction which is well supported by First Circuit case law.

While it is true that a continuation without a finding is not considered a conviction in Massachusetts States Courts and is not counted towards the Massachusetts State equivalents to U.S.S.G. §§ 4A1.1 & 4B1.1. <u>See</u> <u>Commonwealth v. Villalobos</u>, 437 Mass. 797, 802, 777 N.E.2d 116 (2002) (citing <u>Commonwealth v. Jackson</u>, 45 Mass. App. Ct. 666, 670, 700 N.E.2d 848 (1998)), "in the absence of a plain indication to the contrary, . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on states law." <u>Dickerson v. New Banner Institute, Inc.</u> 460 U.S. 103, 119 (1983). It is well established that federal, not state, law should determine the meaning of "conviction" for the purposes of U.S.S.G. § 4B1.1.

See United States v. Lindia, 82 F.3d 1154, 1163 (1st. Cir. 1996) (citing United States v. Pierce, 60 F.3d 886, 892 (1st Cir. 1995)) (Using Federal not state law to determine if a nolo contendere constitutes a conviction under § 4B1.1.).

Furthermore, while it is also true that the First Circuit has not yet made a ruling specifically defining a continuation without a finding from a Massachusetts court as a "conviction" for the purposes of U.S.S.G § 4B1.1, the First Circuit has found on several occasions that a continuation without a finding is a "sentence" for the purposes of U.S.S.G. § 4A1.1. See United States v. Fraser, 388 F.3d 371 (1st Cir. 2004); United States v. Reyes, 386 F.3d 332 (1st Cir. 2004); United States v. Dubovsky, 279 F.3d 5 (1st Cir. 2002); United States v. Morillo, 178 F.3d 18 (1st Cir. 1999). In determining that a continuation without a finding is a "sentence" the First Circuit held that a continuation without a finding is not only an "admission of guilt," as required under 4A1.2(f), but is "treated as a plea of guilty." 178 F.3d at 21 (quoting Luk v. Commonwealth, 421 Mass. 415, 658 (Mass 1995).

Furthermore, the First Circuit, as well as several other circuits, has found that a withheld adjudication (or deferred adjudication) after a plea of nolo contendere should be counted as a "conviction" for the purposes of U.S.S.G. § 4B1.1. See United States v. Pierce, 60 F.3d 886 (1st Cir. 1995); United States v. Cadvid, 192 F.3d 230, 238 (1st Cir. 1999); United States v. Joshua, 305 F.3d 352 (5th Cir. 2002); United States v. Jones, 910 F.2d 760 (11th Cir 1990) (Upheld as "good law" in United States v. Fernandez, 234 F.3d 1345, 1347 (11th Cir. 2000); United States v. Seratt, 1996 U.S. App. LEXIS 10475, No. 95-2988, 1996 WL 230055, at **2 (8th Cir. May 8, 1996) (Counting towards § 4B1.1 a nolo contendere with deferred adjudication where the charge was dismissed after completing probation.). In reaching this conclusion the First Circuit looked to the definitions provided in U.S.S.G. § 4A1.2, as Application Note 3 to U.S.S.G. § 4B1.2 instructs, and relied on the same language that lead the court to conclude that a continuation without a finding should be counted in calculating a defendant's criminal history score. Pierce 60 F.3d at 892.

Although a continuation without a finding is best defined as a tender of a guilty plea followed by a special disposition for which a guilty finding is not entered, (see M.G.L. 278 § 18) the effect is nearly the same as a nolo contendere followed by a deferred or withheld adjudication. Under both procedures the case will be de dismissed upon the completion of certain terms and conditions determined by the court, thereupon giving defendants the "opportunity to straighten themselves out on the road of life without the baggage of a [ ] conviction on their

record."  United States v. Miller, 434 F.3d 820, 824 (6th Cir. 2006).

    The government asserts that—in consideration of the fact that (1) the First Circuit has already held that a continuation without a finding is a "sentence" for the purposes of U.S.S.G. § 4A1.1 and (2) a continuation without a finding is in essence the same as a withheld adjudication after a plea of nolo contendere and the First Circuit has held that such a disposition in a state court is a "conviction" for the purposes of U.S.S.G § 4B1.1 - defendant Alberto Romero's Continued Without a Finding dispositions in the Roxbury District Court for Possession With Intent to Distribute Class B and D was a conviction.

    <u>Request 11 (2/10/04 Seizure of 4 Kilograms of Cocaine)</u>:
Enclosed please find an original and supplementary Boston Police Department Incident Report dated 2/10/04.

    <u>Request 12 (Title III Line-sheets)</u>:
The government has already provided copies of the Title III line-sheets in electronic format, both of which are searchable.  First, the government has provided .html files of each of the line-sheets.  The line-sheets can by searched by simply inserting the CD, clicking on "My Computer," and clicking on the search tool.  As you correctly indicate, for some of the longer calls, the actual line-sheets spill over into multiple files and get bunched together making them unreadable.  But these are simply duplicates of the same calls.  The longer calls are repeated several times.  These searches can also be easily narrowed by simply selecting a single target telephone and within that target telephone a particular day.  The searches take a matter of seconds.

    Second, the government has also provided a second version of the same line-sheets on the each of the wiretap CD's for each of the target telephones.  The line-sheets are in MS Word format and are easily searchable using the same method, clicking on My Computer and utilizing the search function.  Moreover, each of these intercepted calls and their corresponding line-sheets are identified by a descriptive file title which identifies the target telephone, date and time of call, and call number.  I would respectfully submit that adding another layer of identification with bates numbers would be more confusing.

    Third, in addition, the government has already provided more particularized wiretap discovery by providing a disc with the lines-sheets for each of your respective clients.

    Fourth, I have asked our computer specialist about the possibility of converting the discovery that you have from tif-

files into PDF format.  My understanding is that your reason for this request is that the vendors you are using to print these documents charge less for PDF documents than for tif-files.  I am informed that there is not a feasible method to automatically convert each of the more than 3,000 pages of discovery into PDF format.  If you have the Adobe Acrobat program, you can convert each tif-file into PDF format.  Additionally, I am also informed by our computer specialist that there should be no cost difference between printing a tif versus a PDF document.

<u>Request 13 (Call No. 111 and 143 on TT 617-938-9754)</u>:
At paragraph 35 and 36 in the May 25, 2005 affidavit in support of the interception of target telephone 617-938-9754 described intercepted calls 111 and 143 on TT 617-938-9754.  Since the wiretap application affiant, TFA Joao Monteiro, is not a Spanish speaker, the summary of these two phone calls was based on the line-sheet summary created by the contractor interpreter which you already have in discovery.  As described above my response to request 4, the government is declining to provide information about the training and qualification of contract interpreters pursuant to LR 116.6(A).

<u>Request 14 (Cell-Site Data)</u>:
Each of the court wiretap orders included a request pursuant to Title 18, United States Code, Sections 2703(d) for cell-site location.  Based on this information, during intercepted calls, the DEA was able to determine which cell phone tower the target telephone was using during calls.  At this time, the government is not seeking to introduce any cell tower location evidence at trial.  If there are particular calls, however, where cell-tower information is particularly relevant, the government may seek to introduce this evidence, but will given written notice sufficiently advance of trial.

If any one of you wish to view the cell-tower information for particular calls, please let me know by giving me the target telephone number and call number and will provide you with the cell tower information for that call.

<u>Request 15 (Location of Items Seized During Search Warrants)</u>:
To the extent that the DEA 6 reports describe the location from where items were seized during the search warrants during this case, the government is declining to provide any further information pursuant to LR 116.6(A).  To the extent, however, that the reports do not describe the location from where items were seized, the government will provide such information in writing to each defense counsel within 30 days.

Request 16 (Photographs/Videos taken of Search Warrant Locations):
Video and/or photographs were taken at only two locations during the search warrants: (1) 57E Sumner Street (N-145); and (2) 32 Holyoke Street, Apt. 3C.  The government has already provided copies of these photographs for 57E Sumner Street to counsel for defendant Gerard Kimble and the photographs for 32 Holyoke Street to counsel for defendant Ronnie Christian. If other counsel wish to have copies of these photographs, please let me know and I will forward them to you.

Request 17 (Locations From Where Law Enforcement Agents Conducted Surveillance):
The government is declining to provide any information to this request pursuant to LR 116.6 for two reasons.  First, the request is extremely over broad.  As indicated in the DEA 6 reports, surveillance took place nearly everyday during the wiretap, with multiple law enforcement agents, at various locations in and around Boston.  It would virtually impossible to pinpoint the exact location from where law enforcement officers made each and every observation.  The reports, furthermore, give a general description of the what agents observed on surveillance and where they saw it.  For the most part, agents made their observations from unmarked police vehicles on public streets.  None of the observations were made from or in locations where any of defendants had any privacy interest.

Second, the government has a substantial interest in not disclosing the precise details about the locations from where law enforcement agents made their observations.  In some instances, ordinary citizens volunteer their private residences or property to law enforcement.

However, if there is an observation, or group of observations, that is of particular interest to anyone of you, please let me know and I will certainly reconsider a narrower request.

Request 18, 43 (BPD FIO Reports and Gang Intelligence Reports):
Pursuant to your request, I am in the process of obtaining copies of Boston Police Department Field Interrogation/Observation Reports relating to prior stops or observations of each of the defendants in this case as well as the BPD Gang Intelligence Reports relating to any of the defendants.  The government will disclose the reports that are either exculpatory, constitute Jencks material, contain evidence that the government may seek to introduce at trial, or otherwise subject to disclosure under Fed. R. Crim P. 16 or the Local Rules.

Request 19 (Other Reports Relied Upon by TFA Monteiro)
In addition the DEA 6's regarding the controlled purchase of cocaine and crack cocaine and Husie Joyner and Gregory Bing between September 2004 and January 2005, which have already been disclosed, the government will provide all other police reports relied upon by TFA Monteiro by the end of next week.

Request 20 (Physical and/or Scientific Reports)
The government has requested a latent fingerprint examination of the wrappers seized at 57E Sumner Street, but the examination has not yet been conducted.  The government will produce the report as soon as it is completed.

Request 21 (RMV Photographs of the Defendants)
Enclosed please find copies of the RMV and prior booking photographs that law enforcement agents used to identify the defendants during physical surveillance.

Request 22 (Recorded Jail Calls)
The government has already disclosed all the audio recordings of the recorded calls of individual defendants while in pretrial detention which have been subpoenaed by the government to their individual counsels.

Request 23 (Handwritten Notes and/or Reports from Interviews of Cooperating Witnesses or Confidential Informants; and Request 46 (Documents Relating to Contracts/Agreements with Cooperating Witnesses)
Pursuant to LR 116.6(A), the government is declining to provide handwritten notes or reports of any interviews conducted of any confidential informant or cooperating witness in this case, at this particular time, for the following reasons.

First, as further described below, handwritten notes are not statements of the government agents.  Similarly, the handwritten notes of government agents would not be Jencks of a cooperating witness since they are not shown the notes and have not signed or adopted the notes.  See Fed. R. Crim. P. 26.2(f)(1).  The government will disclose handwritten notes of government agents in the event that those notes memorialize an inconsistent statement of the witness pursuant to LR 116.2(B)(2) twenty-one days before trial.

Second, with regard to confidential informant referred to paragraph 61 of TFA Monteiro's 7/14/05 affidavit in support of a wiretap on Anthony Smith's cellular phone, this individual will not be called as a witness any trial or hearing.

Third, with regards to cooperating witnesses, the government may have several cooperating witnesses who will be testify at

trial. The government will agree to provide any reports or prior statements of these witness(es) 30 days prior to trial. The government is declining to provide any such information at this time because disclosure of such information would potentially jeopardize the personal safety of one or more of these cooperating witnesses.

There are no audio of video recordings of any of these interviews of confidential informants or cooperating witnesses.

Request 24 (Reports of Defendant BING):
Enclosed please find BPD reports authored by BPD Detective Robert Fratalia regarding his interviews with Gregory Bing. Portions of these reports have been redacted which contain information about other ongoing investigations unrelated to the charges and defendants in this case.

Request 25 (Expert Witness Disclosure):
The government will agree to provide all expert witness disclosures pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence and LR 116.5(A)(2) forty-five (45) days prior to trial.

Request 26 (Phone Logs of Law Enforcement Agents)
During the wiretap investigation, information that was being received over the wiretap was conveyed to surveillance agents in the field over police radio and cell phones. There were no logs or recordings generated that memorialized these conversations other than the DEA 6 reports.

Request 27 (Law Enforcement Agents Who Participated in Christopher Baxter Stop):
The government will provide a list of the law enforcement agents and officers involved in the June 22, 2005 stop of Christopher Baxter to counsel for defendant Anthony Smith by the end of next week.

Requests 28-30, 31-35, 38-39 (Cedric Ingram Requests):
The government has asked to counsel for defendant Cedric Ingram for additional time to respond for these requests for defendant Ingram and for further clarification. Furthermore, some of defendant Ingram requests have already been ordered to be produced under the Local Rules. Under LR 116.3(D), "A defendant participating in automatic discovery must not request information expressly required to be produced under 116.1; all such information is by these Local Rules deemed ordered by the court to be produced."

Request 36 (Cell Phone Numbers Downloaded):
The information regarding to incoming and outgoing calls

from Cedric Ingram's cellular phone was previously provided to counsel for Ingram. The cellular telephones seized from 75 Ellington Street and 175L Centre Street are available for your inspection at the offices of the DEA. However, in order to obtain the numbers which are stored in the memory of these cellular phones, the government will need the written consent of your client and your agreement that you will not seek the challenge the search of phone pursuant to your client's consent.

   Request 40 (Search at 75 Ellington Street, Dorchester and 175L Centre Street, Quincy, MA):
   Regarding the search warrants at 75 Ellington Street, Dorchester and 175L Centre Street, Quincy, the government has already disclosed the search warrants for these locations, the search warrants, inventories, and chain of custody forms (DEA 7a's). Furthermore, each of the items seized are available for your inspection at the offices of the DEA. Therefore, the government has provided all the relevant documents which are responsive to this request.

   Request 41-42 (July 12, 2005 Stop of Dana Rice)
   The government will provide copies of all law enforcement reports regarding the July 12, 2005 stop of Dana Rice as well as any other BPD or DEA reports traffic stops or police interactions with defendant Rice. As further described above, the government will not be providing copies of handwritten notes except to the extent that such notes are inconsistent with other statements made by law enforcement agents.

   Request 46, 48-50 (Contracts with Cooperating Sources)
   By late next week, the government will provide copies of any additional DEA 6 reports regarding the DEA Cooperating Source (CS) involved in the controlled purchases of cocaine and crack cocaine from Gregory Bing, including the DEA 6 report(s) regarding the CS's deactivation. This DEA CS is currently incarcerated and is in federal custody. The deactivation of this DEA CS was detailed in TFA Monterio's April 19, 2005 wiretap affidavit. The government will also make available for inspection the DEA Form 473, Confidential Source Agreement, for this DEA CS, but with the name of the CS redacted, until 30 days before trial.

   Request 47 (Evidence that Defendant Husie Joyner Sold Marijuana):
   The government is not intending to offer any evidence that defendant Husie Joyner was involved in selling marijuana, though there is evidence that Joyner was also involved in selling marijuana in addition to cocaine and crack cocaine. For example, during the wiretap, during an intercepted call on 5/23/05 on target telephone 617-632-0420, Joyner and Gregory Bing discussed

a marijuana transaction:

> Husie: You know they got a thing coming over too.
>
> Bing: Yeah but they kept going up and up and up and up and up on the buys and shit. Two bags...You they trying to get two bags of herb for $50.
>
> Husie: Huh?
>
> Bing: Two bags of marijuana for $50.
>
> Husie: [Laughs]

Several individuals in proffer sessions have also indicated that Joyner was also involved in the distribution of marijuana, but was predominately involved in the selling of cocaine and crack cocaine. Because the disclosure of any written statements would disclose the identify of these individuals and potential jeopardize their personal safety, the government is declining to provide any such reports at this time.

Request 51 (Jencks Material)
The government will agree to provide all Jencks material 21 days before trial.

If there is discovery request that you believe that I have not adequately addressed, please let me know.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Neil Gallagher
Neil J. Gallagher, Jr.
Assistant U.S. Attorney
(617) 748-3397


Without Enclosures